IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KENNETH RAY MORPHIS, JR.                                                                 PLAINTIFF

     v.                              Civil No.   14-2027

SHERIFF STEVEN SMITH, Logan
County, Arkansas; DAVID SPICER,
Jail Administrator                                                                                DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. The case is before me pursuant to the consent of the parties (Doc. 12).

Plaintiff is currently incarcerated in the United States Penitentiary located in Marion, Illinois. The events that are the subject of this case occurred while Plaintiff was incarcerated in the Logan County Detention Center (LCDC) located in Paris, Arkansas.

During his incarceration there, Plaintiff contends his constitutional rights were violated in the following ways: he was subjected to unconstitutional conditions of confinement; he was denied medical care; he had no access to news media; and there was no proper grievance procedure.

Defendants have filed a Motion for Summary Judgment (Doc. 23). Plaintiff has responded to the Motion (Docs. 32 & 38). The Motion is ready for decision.

## I. BACKGROUND

Plaintiff was booked into the LCDC on November 15, 2013. He remained incarcerated there until February 12, 2014, when he was transferred to the Arkansas Department of Correction (ADC). With respect to his conditions of confinement, Plaintiff states he had toilet water running through the middle of his cell; he was without hot or cold water in his cell; there were no fire extinguishers or a sprinkler system in the living areas of the pod; there were no TB lights; and he was denied outdoor recreation.

David Spicer by affidavit states they "do have issues with the plumbing at the jail" from time to time and when they are made aware of a problem the County maintenance man, Barron Bates, is called. *Defendants' Exhibit (hereinafter Defts' Ex.)* B at ¶ 4. In the meantime, Spicer states "we accommodate the inmates in these cells as best as possible by providing them with mops and towels to control the water leakage and having jailers bring them water during time periods in which their sinks are not functioning." *Id.* at ¶ 5. Moreover, Spicer asserts that the "leaks in the toilets are the result of damage to the seals around the bottom of the toilets caused by inmates standing on the toilets. The water that leaks out of these seals is clean water, not sewage." *Id.* at ¶ 6.

Plaintiff states that the plumbing was never working properly during his incarceration at the LCDC. *Plaintiff's Response (hereinafter Plff's Resp.)*(Doc. 32) at ¶ 5. Plaintiff states maintenance never came to fix the plumbing. *Id.* at ¶ 6. Plaintiff agrees that the seals were broken on the toilets; however, he maintains it was sewage that was leaking and produced an awful smell. *Id.* at ¶¶ 7 & 9. He maintains it was unsanitary and offensive. *Id.* at ¶ 8. Plaintiff states he was unable to clean his hands or cell properly and worried about contracting a serious

illness and the effect on his Hepatitis C. *Id.* He also maintains he became ill with fever and diarrhea and was bed ridden for three days. *Id.* at ¶ 9. Plaintiff admits that the jailers would bring water; however, he contends they did so on their own schedule and not when the water was needed. *Id.* at ¶ 76

According to Spicer, weather permitting, "inmates are offered yard call every day although not every inmate takes advantage of this opportunity." *Defts' Ex.* B at ¶ 17. Plaintiff, however, asserts that he was only allowed yard call three or four times during the eighty-nine days he was incarcerated at the LCDC. *Defts' Ex.* C. While he agrees some inmates were offered yard call more frequently, he states he and a few other inmates were not given this opportunity. *Resp.* at ¶¶ 15-16. Plaintiff could exercise in the jail but only "at a very minimum due to lack of space because of over crowding." *Id.* at ¶ 17.

With respect to media access, Spicer asserts that inmates are provided with plenty of newspapers. *Id.* at ¶ 18. Spicer states they "have church organizations who visit the jail almost daily who bring the inmates newspapers in addition to religious reading material." *Id.* at ¶ 19. Inmates are also allowed to receive newspapers at the jail. *Id.* at ¶ 20. Spicer states there are "no restrictions on inmates being allowed access to newspapers." *Id.*

According to the Plaintiff, newspapers may have come into the jail with the church organizations, but they never made it back to the pod for inmates' use. *Resp.* at ¶ 19. He indicates there were no televisions and the newspapers were "very seldom ever brought back to inmates." *Id.* at ¶ 20. Plaintiff feels he was being purposely secluded from current events. *Id.* at ¶ 22.

To the best of his knowledge, Spicer asserts that many of the grievances attached to the complaint are not part of Plaintiff's jail file and he never saw them until this case was filed. *Defts' Ex.* B at ¶ 21.

Spicer admits that the sprinkler system in the jail is inoperable. However, he maintains the jail is equipped with fire extinguishers and fire detection equipment. *Id.* at ¶ 7. Plaintiff maintains there were no fire extinguishers in the cell areas where the inmates were housed. *Resp.* at ¶¶ 38-39.

During a jail riot, Plaintiff states the inmates started a fire in the hallway. *Resp.* at ¶ 40. Plaintiff states no alarms or sprinklers went off. *Id.* Plaintiff asserts that his lungs were seared from the fire and he also states all the inmates were maced. *Id.* at ¶ 41.

With respect to his denial of medical care claim, Plaintiff states he received no chronic care for his Hepatitis C and no care following an incident on December 24, 2013, when Emergency Medical Services (EMS) was called because Plaintiff believed he had a heart attack or a stroke. Plaintiff states the EMS workers said his blood pressure was high and that he needed blood work done to see if he suffered a heart attack or a stroke. *Resp.* at ¶ 31.

Plaintiff states he did not submit a medical request seeking treatment for Hepatitis C because staff would not bring medical request forms to him. *Resp.* at ¶ 24. He does contend he submitted grievances about this issue that were never answered. *Id.* He also indicates he verbally informed staff of his condition and made multiple verbal requests for medical care. *Id.* at ¶ 25.

Plaintiff maintains that his Hepatitis C condition worsened while he was incarcerated in the LCDC. *Resp.* at ¶ 27. Specifically, he states he did not have enough drinking water to stay hydrated and this kept his kidneys and liver from functioning properly. *Id.*

Spicer indicates he was contacted in the middle of the night on December 24, 2013, about EMS coming to the jail because Plaintiff was having a medical issue. *Defts' Ex.* B at ¶ 9. Spicer was told Plaintiff was "fine but that if his situation worsened, he needed to be taken to a doctor." *Id.* at ¶ 10. To Spicer's knowledge, Plaintiff made no requests for medical care for this issue until January 22, 2014. *Id.* at ¶ 11. Plaintiff states he made numerous verbal requests but was not brought back a form to submit a written request until Defendants realized he was going to file this lawsuit. *Resp.* at ¶¶ 33-35. Prior to that time, Plaintiff states all his requests for forms were denied or ignored. *Id.*

By January 22nd, the Plaintiff had been sentenced to the ADC. *Defts' Ex.* B at ¶ 12. The ADC was contacted for approval to take Plaintiff to a doctor. *Id.; Defts' Ex.* D. Approval was given on January 28, 2014. *Id.* The medical facility inmates are taken to usually has a wait time of two to three weeks. *Defts' Ex.* B at ¶ 14. Plaintiff was transferred to the ADC before this waiting period was up. *Id.* at ¶ 15. However, it is not clear from the summary judgment record whether an appointment was ever made for the Plaintiff prior to his transfer. When he was seen at the ADC, Plaintiff states he was seen by a doctor and diagnosed with, among other things, an irregular heart beat. *Resp.* at ¶ 37.

To Spicer's knowledge, Plaintiff never made a request to see a doctor about his Hepatitis C. *Defts' Ex.* B at ¶ 16. If he had, Spicer states an appointment would have been scheduled. *Id.*

AO72A
(Rev. 8/82)

Finally, Plaintiff contends there is no proper grievance procedure at the LCDC. He maintains he was denied access to grievance and request forms. He also states he did not receive responses to his grievances.

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the

AO72A
(Rev. 8/82)

defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

**(A). Conditions of Confinement**

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding,

hygienic materials, food, and utilities. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted).

To state an Eighth Amendment claim, the Plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*quoting, Wilson v. Sieter*, 501 U.S. 294 (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 2 (1992) (The objective component is "contextual and responsive to contemporary standards of decency.")(quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994).

According to the Plaintiff, toilet water was leaking in his cell for the entire eighty-nine days he was confined in the LCDC. He maintains that the water did contain sewage and was odorous; he asserts that the towels and mops provided to deal with the problem were inadequate; he asserts they were not provided sufficient cleaning supplies to make the cell sanitary; he further alleges there were periods of time when they did not have access to hot or cold water for drinking or to perform basic hygiene; and he states he was locked in the cell twenty-three hours a day.

-8-

With respect to sanitation, the Eighth Circuit focuses on "the length of exposure to unsanitary conditions and how unsanitary the conditions were." *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). Clearly, there are genuine issues of material fact as to Plaintiff's unsanitary conditions of confinement claim.

Similarly, I believe there are genuine issues of material fact as to Plaintiff's claim that the inoperable sprinkler system and the lack of fire extinguishers within the cell blocks created an unsafe environment. Plaintiff indicates that there was a fire at the facility while he was detained there and that his lungs were seared from inhaling the smoke. *Cf., Hall v. Phillips*, 2005 WL 3783651 (W.D. Ark. 2005) (lack of sprinkler system did not preclude summary judgment in prison officials' favor on Eighth Amendment claim where there was no fire when the inmate was detained at the facility and inmate was never physically harmed). Defendants do not address the issue of the fire at the facility and any resulting injury suffered by the Plaintiff.

With respect to Plaintiff's exercise claim, I believe Defendants' reliance on *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) is misplaced. While it is true that the alleged period of denial of outside exercise was three months, approximately the period at issue here, the Plaintiff in that case "was permitted to use a day room with exercise equipment for three hours each week." *Id*. In contrast, the Plaintiff here states there was insufficient space, due to overcrowding, for him to adequately exercise inside the jail. Nothing in the summary judgment records suggest Plaintiff has access to exercise equipment.

Defendants are nevertheless entitled to summary judgment on Plaintiff's lack of exercise claim. A constitutional violation exists if prison officials are deliberately indifferent to an inmate's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of

exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* Plaintiff does not maintain he was physically harmed by the lack of exercise. *Resp.* at ¶ 14. This is fatal to this claim.

With respect to the TB lights, I believe Defendants are also entitled to summary judgment on this claim. Plaintiff does not suggest he was exposed to TB, that he contracted TB, or that the County did not have other safe guards in place to protect inmates from TB. *Cf. Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006).

### (B). Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Garcia must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the [officers] actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

In order to show he suffered from an objectively serious medical need, Garcia must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Society

-10-

does not expect prisoners to have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

Here, Plaintiff maintains that both Defendants personally knew of his health conditions. *Resp.* at ¶ 47. Plaintiff maintains his efforts to submit written requests for medical treatment were blocked on multiple occasions. The summary judgment record contains no information on: how medical requests are submitted; who reviews the requests; who decides when an inmate goes to the doctor; how chronic long-term conditions such as Hepatitis C are managed; or who has the responsibility of following through on recommendations for treatment given by the EMS or other medical personnel. In short, the summary judgment record is wholly lacking. Defendants are not entitled to summary judgment on this claim.

**(C). Access to News Media**

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817,

822 (1972). Among other things, the "Constitution protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

Prison policies impinging on inmates' First Amendment rights are valid only if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999). "[E]ven though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their duty to protect those constitutional rights that a prisoner retains." *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993).

In determining whether a regulation or restriction is reasonable, the court employs a balancing test considering: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist. *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993)(*citing Turner*, 482 U.S. at 89-91).

Here, there is no ban on newspapers. The LCDC allows church organizations to bring newspapers for the inmates and allows the inmates to obtain newspapers through friends and family members. *Defts' Ex.* B at ¶¶ 18-20. The LCDC apparently does not itself provide newspapers to inmates. The summary judgment record contains no information on how newspapers brought to the facility by church groups, friends, or family members are distributed to particular inmates or, in the case of the ones brought by church organizations, to the various cell areas. In fact, Plaintiff asserts that the newspapers do not make their way into the cell areas

so that inmates who want to read the newspaper are able to do so. There is no other means of access to news media at the facility.

Clearly, there are genuine issues of material fact on this claim. The mere presence of one or more newspapers in the facility does not satisfy an inmate's First Amendment rights to see and read newspapers or other news media.

**(D). Grievance Procedure**

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (citations omitted); *see also Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (denial of grievances does not state a substantive constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration"); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000) (inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Id.* (citation omitted). "[A]ny alleged due process violation arising from the alleged failure to

investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

## IV.  CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (Doc. 23) will be **GRANTED IN PART AND DENIED IN PART.** Specifically, the Motion will be **GRANTED** with respect to the following claims: Plaintiff's denial of outdoor exercise claim; his claim regarding the TB lights; and, his claims that the grievance procedure was inadequate.  The Motion will be **DENIED** with respect to all other claims.  A separate order in accordance with this opinion will be entered.

DATED this 21st day of August, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE